JOHN R. DI MONA, PROSECUTOR, v. GENE R. MARIANO ET AL., RESPONDENTS.

Argued May 3, 1939—Decided August 11, 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor, *Walter S. Anderson, Jr.*

For the respondent Mariano, *Carl Kisselman.*

For the respondents city of Camden and Mary W. Kobus, Commissioner of Public Safety of said city, *Firmin Michel.*

The opinion of the court was delivered by

PARKER, J. This is a contest over the right to hold and exercise the office of judge of the Camden City Police Court. The action is in *certiorari,* and therefore necessarily grounded on the theory that at the time of allowance of the writ, the prosecutor was in possession of the office, and that his possession has been interfered with by illegal action which he seeks to have declared illegal and set aside. Possession of the office is a *sine qua non* in such a case. *Bradshaw* v. *Camden,* 39 *N. J. L.* 416, is a leading authority on this point, and one of a long line of cases, two of the more recent decisions being *Moore* v. *Bradley Beach,* 87 *Id.* 391, and *Murphy* v. *Freeholders,* 92 *Id.* 244. Prosecutor does not question the rule laid down in those cases, but claims that under the facts in this case he is not within it; that he is in possession of the office, and that Mariano is a mere interloper, disturbing, but not destroying, that possession.

Turning to the proofs, and to the admissions of counsel, the following state of facts clearly appears: for some time previous to March 9th, 1939, the office in question had been legally vacant, there being no incumbent thereof. The business of the police court had been administered by defendant Mariano as "acting judge." For prosecutor it is claimed that Mariano was illegally functioning in that capacity, because under the statutes there can be an "acting judge" only when the holder of the office is "temporarily absent, disabled or disqualified" and no person is by law authorized to perform his duties in such case. See *R. S.* 40:46-13, and *R. S.* 2:220-1. However, that question is not really before us, and therefore does not call for decision. A meeting of the Board of Commissioners, the governing body, was scheduled for the afternoon of March 9th. Until that meeting, the power of appointing a police judge was vested in Director Mary W. Kobus, Commissioner of Public Safety. In view of what happened, it may be surmised that she anticipated that at the meeting she would be deprived of that power. However this may be, on March 9th, before the meeting, she appointed in writing the respondent Mariano as police judge of the Camden City Police Court, dating the appointment back to the 8th, but that is immaterial. Mariano took the oaths of qualification at once, and they were filed. Thereafter, on the same day, March 9th, the meeting of the board was held, and a resolution adopted by a vote of three to two, transferring the "Bureau of the City Government" (which evidently included the Police Court) from the Department of Public Safety to that of Public Affairs; and thereupon Director Von Nieda of the latter department, undertook to appoint prosecutor Di Mona to the judgeship in question. He took and filed the oaths of qualification. So far as we can ascertain from what is before us, there was nothing by way of a formal commission in either case, but only letters of appointment. The next morning Mariano and Di Mona repaired separately to the chambers or anteroom of the court, each disputed the other's title, both went out to the bench, Di Mona tapped with the gavel, Mariano asked for it and seems to have taken it. Mariano had the complaints, and

proceeded to call and decide the cases, Di Mona protesting. After the first day's session there was a written stipulation between the claimants, printed in the case, for the practical conduct of the court *pendente lite* by Mariano, Di Mona to show himself at court each day and then depart. The stipulation is expressly without prejudice to either party, and is mentioned here to indicate that the question of possession of the office is to be decided in view of what happened up to and including the court session of March 10th.

We have no hesitation in saying that on March 10th, when the rule to show cause for a *certiorari* was made, Mariano was in possession of the office and administering it *de facto* at least under color of legal right. His "appointment" was made before that of prosecutor and so was his qualification. He was conducting the court business. Hence we conclude that prosecutor is without a legal status to dispute Mariano's claim by *certiorari,* and must resort to *quo warranto*. The writ of *certiorari* must therefore be dismissed.

It may be well to note, as a matter of practice, that the depositions and documentary evidence submitted in this case, were taken and certified after the rule to show cause and before allowance of the writ, and without any rule of court permitting them. In strictness they should not be considered. *Frascella* v. *Board of Medical Examiners, 79 Atl. Rep.* 1063 (not officially reported), and cases cited. But in view of the issue raised in this case, in which the public is interested, it seemed advisable to inform parties and counsel of our conclusion on the question of actual possession of the office. On the issue sought to be decided, viz., the right of possession, a great deal of testimony was taken *pro* and *con* touching the place of residence of Mariano, whether at Camden or outside of it at Haddonfield. That may be a factual question to be considered by a jury in a case of *quo warranto*. See *High, Ext. Legal Remedies,* § 740; 51 *C. J.* 359; *Sisters of Charity* v. *Morris Railroad Co., 84 N. J. L.* 310, 313. Counsel are of course aware that under section 4 of the *Quo Warranto* act of 1903, now *R. S.* 2:84-7, a contest over a municipal office, as here, is substantially *inter partes* and does not require the intervention of the attorney-general, or special leave of the court.